RLC's Cruises LLC, and we'll begin with Mr. Nichols. And let me just remind everyone, of course, we've allowed you the full 20 minutes per side, but we don't really need to spend a lot of time. We're well aware of the steep standard for mandamus proceedings, because we have these all the time. You're certainly welcome to remind the court of those, but it would be better if both sides would spend your time on the specific merits of this case and not on those general standards. Okay, Mr. Nichols. Good afternoon, and may it please the court. In words previously quoted by this court, like a moth to the light, so is a litigant drawn to the United States, and so is Pearl Sea's drawn to litigate this dispute, which arises indisputably at a vessel classification services in this circuit. Pearl Sea's tells the court at the tail end of its response to the mandamus petition, the particular light that draws Pearl Sea's to this circuit, which is this court's prior decision in Otto Candies, which the court knows well, authorizes a very limited cause of action for negligent misrepresentation under the restatement of torts and federal maritime law under very specific circumstances. However, it's our fundamental position that this court's decision in Hellenic held directly and indisputably, and multiple district courts following this court's guidance in Hellenic have followed this court's guidance in holding that a ship buyer cannot avoid enforcement of a form selection clause, which is located either in a contract between the classification society and the ship builder, or in that classification society's rules. Of course, in this case, we have both. Even if that party seeking to bring a claim, if the party seeking to bring a claim was not a party, it still brings in Otto Candies' cause of action. In Hellenic and Tancura, the non-signatories actually took possession of the vessels and entered them into service. Did that happen here? Eventually, yes. Although the record, all we have is the record of the Pearl Sea's pleadings. In the pleadings, it does not recite that, does it? Correct. So that's a difference in those cases between this one. There is a difference factually, but from our position, does not reflect a difference that would require a separate or different application of direct benefits estoppel, because What benefit did Pearl Sea's actually receive from the classification contract? The benefits are the same as those that the court determined existed in cases such as Hellenic and in other cases. Can you articulate what the benefits are in this case under the facts pled here? Sure. And I can direct the court back to, for example, when Judge Jones wrote for the court in Otto Candies, she basically laid out the framework of classification societies. The court's familiar with those. Classification societies will survey a vessel, they'll survey the hull, survey the machinery in the vessel, and they'll issue, ultimately issue certifications that are, as the court found in Otto Candies, are generally relied upon by people who buy ships, charter vessels. I'm asking specifically in this case, factually, what benefit did Pearl Sea's actually receive from the classification contract here? Sure. So in order to determine that, all you need to do, Judge, is go to their pleading. And so I'll direct you to a few areas of their pleading. So the negligent misrepresentation claim, which they attempt to make under Otto Candies, that's set out in paragraphs 104 to 108 of their first amended complaint. And so, for example, in paragraph 107, they say, quote, Pearl Sea's was a member of a limited group for whose benefit and guidance Lloyd's Register was to supply its information. If you'll recall, Judge, in their amended complaint, they allege, Pearl Sea's alleges, that they were the ones to choose LRNA to provide the classification services. And then they go further through each one of their causes of action, whether you look at their cause of action for fraud. They say that Lloyd's Register falsely represented to Pearl Sea's that its vessel was in compliance with its rules and regulations, SOLAS, which is the Safety of Life at Sea Convention, and the laws and regulations of the Marshall Island, gross negligence. Same thing. Lloyd's Register knew of but disregarded an unjustifiably high risk of harm by issuing reports indicating the vessel met SOLAS and class requirements, negligent misrepresentation, promissory estoppel. These are all claims that are based on an alleged benefit that Pearl Sea's received as a result, as a direct result, of LRNA's work under its classification contract with the ship buyer. And as this court found in Hellenic, that exact language that I quoted from Pearl Sea's amended complaint was the exact language that the Hellenic court quoted in finding that the plaintiff, in that case, also made an argument. There was no direct benefit. But the court in Hellenic said, quote, the plaintiff, since the plaintiff alleged that the classification society knew or should have known that its representations were intended for the ship buyer's guidance and benefit in the business transaction, that that was a direct benefit in and of itself. If you need to go further, Judge, you can also look to the general language of cases like Hellenic that talk about the purpose of a classification is to provide, for example, lower insurance rates for vessels because insurers ultimately will look to classification in issuing that. But along the lines of the question to you, just looking for fact-specific benefits, if that's one prong of the analysis, is it undisputed that Pearl Sea's selected you? And hence, but for that selection, they would have had to have gotten another classification society? That's correct. It's undisputed. And again, we're just dealing, Judge, with their allegations. There's no factual record in this case. But according to their allegations that they met with representatives of LRNA, they selected LRNA, and as a part of their contract with the ship builder, they required that the ship builder procure and deliver with the vessel the certification. And is that it? It's selection and then ultimate certification? Or were there inspections and ongoing reports throughout the period of time? Absolutely. So once the classification society is selected in the manner that they've alleged, then the classification society gets to the business of doing the whole surveys or inspections. They survey the machinery, and that's part of their allegations in the case. If you look at their factual allegations, they talk about the fact that LRNA engaged in these surveys and made certain representations. Okay. Let me ask you just temporarily, though, and you both will be able to answer this, are the representations that they say are actionable, the ones that were contemporaneous with the inspections, or are they only focusing on misrepresentations allegedly made during the arbitration after the contract period? I think a fair reading of their complaint is it's both. Okay. Because temporarily, if you look at, I've kind of done a little bit of a timeline, but as the court knows from the record, the contract that we're talking about for classification services gets signed in 2006, the survey work commences from that point in time. As you know from reading the record, the demand for arbitration gets made in April of 2008. And then the important thing, too, is that the services, in essence, continue, because remember, according to their own allegations, the construction of the vessel continued even after the arbitration was commenced. In other words, the arbitration was commenced midstream during the construction of the vessel. Is your case based on benefits of a known contract, or is your case based on claims are solely determined with reference to the contract? Do you understand the question? I think I do, and I think the answer is that it really comes down to both, and it really comes back to my initial point, which is, if you are seeking to make a claim under Otto Candies, you are, by the very nature of the Otto Candies claim, making an argument that the work that was done under the classification contract with the shipbuilder was done for your benefit. But they're not making that argument. Which of Pearl Sea's claims must be determined by reference to the classification contract? The negligent misrepresentation, it is not you said in the contract you would do X and you didn't do X. That's not this claim. Which claim must be determined by reference to the classification contract? So if you look at each claim, for example, on the fraud claim on paragraph 97, the allegation that they make is that Lloyd's Register falsely represented to Pearl Sea's that the vessel was in compliance with its rules and regulations, SOLAS and the laws and regulations of the Marshall Islands. The rules and regulations that they're referring to there are the rules and regulations for the classification of ships, which contain the form, one of the places. That's the rules and regulate. You conflate many times the rules and regulations and the classification contract. I'm talking about the classification contract right now. And so in Hellenic, for example, I believe the court relied strictly on the rules. I think the court in this case could rely on either one. Well, we can't rely on the rules here. Maybe perhaps because the rules only relies to services provided by L.R. and L.R. is defined as Lloyd's Register, the U.K. corporation. So in your company is North America. So that's a problem about patently erroneous for the. It's possible that it's broad enough, but we can't say the district court. Well, perhaps we can, but one could argue that we can't say the district court was patently erroneous in finding that something that said U.K. corporation is not the same as North America. When this was argued to the judge at the hearing, the district court at the hearing, and you made no response to this argument at the hearing. Well, we certainly responded. You responded in your general Hellenic way, not specifically about this rules and regulations issue. We responded in briefing before the district court. We also responded in our briefing to this court. And the bottom line is that with respect to the contract that we're dealing with, the contract for marine services during construction, it explicitly provides within that contract that the services to be provided will be provided by Lloyd's Register or an affiliate that is authorized to do business in the jurisdiction where the services are being provided. So with all due respect to Percy's argument there, the Lloyd's Register rules are explicitly incorporated within that contract. They are the rules of the classification society in Hellenic, for example, when Judge Ellison decided that case on a district court level, he found that it is a lot of talk about actual notice and so forth. What Judge Ellison found in that case was that if the ship buyer was on notice of the identity of the classification society, as I discussed earlier, it's clear that that Percy's was if they're on notice of the identification of the classification society, then they are in constructive notice of the rules of that classification society. And that was the finding by Judge Ellison that this court in Hellenic then found and said, we agree with that finding. And that's a basis on which we can find that there was a not just a benefit, but that it would not be unfair under the circumstances to apply that form selection clause. OK, putting to the side the rules and regulations and going back to the classification contract, which of Pearl C's claims must be determined by reference to the classification contract? Well, all of our position, Your Honor, with respect to their claims, is that all of their claims arise out of services provided under the classification contract. These these must be determined by reference to, i.e., you have to refer to something in the contract to tell you what your claim is. Sure. The standard of by which the services were provided, which would serve as the basis and under it, let's assume, for example, judge that they really wanted to make an auto candies claim, which they do. It's a negligent misrepresentation claim. So it rises in negligence. There has to be a standard to judge the conduct under that claim or cause of action. The standard that they're seeking to apply would be a standard that would apply to LRNA under the classification contract and the rules. And that's why we've alleged both as a basis for the we've alleged that the form selection clauses in both are the basis of a proper basis for dismissal here. What do you do with Pearl C's argument regarding Clause 15 in an effort to distinguish this case from Hellenic? Well, with respect to the application of the direct benefit estoppel theory, our respectful position is that a party does not need to give up whatever defenses it has, for example, to third party beneficiary status, which I think is what the what is the gist of the court's question. So the basis of the direct benefit estoppel theory is not that a defendant in a case like this needs to exceed or admit that Pearl C's is a third party beneficiary. The point of the direct benefit estoppel theory is that as a plaintiff, affirmatively, you are trying to make claims that are based on work that is performed under a classification contract. You need to take the entirety of that contract. You can't take bits and pieces. You embracing you're embracing that contract, which I respectfully argue, Judge, is a benefit. In other words, they are seeking the Hellenic found that was a benefit. In other words, they're reaching out to those services under that contract and saying that gives us a right to make a claim under negligent misrepresentation. So so with respect to to their point on that, Judge Smith, it is that that that it is the nature of their reaching out that applies. And so therefore, even if there is a clause in that contract that says this applies strictly between the contracting parties, that's the very nature of a direct benefit estoppel. They're not a signatory to the contract. And yet the case is fine that that they are stopped to prevent enforcement of those clauses. All right. Your time has expired and you've reserved for Miss Swain the rebuttal time. Thank you, Mr. Nichols. Mr. Kimball. Thank you very much. My name is John Kimball. And the answer to your question is that proceeds derived absolutely no benefit whatsoever from the classification contract. The most you could say, the most you could say is that at the beginning of the transaction, proceeds had some expectation that it might get a benefit. And it did have some initial discussions with Lloyd's with respect to the classification of the vessel. But the facts are that some benefit from the inspections throughout the construction process. Regrettably, none, because as the facts are, when the vessel was actually delivered to Pearl Seas. Once a settlement agreement was reached, just so you're clear on the facts, the vessel was never put in class by Lloyd's, in fact. The arbitration between Pearl Seas and the shipyard continued for a number of years. We contend, of course, that Lloyd's colluded with the shipyard in the arbitration. But put that aside for the moment. At the end of the arbitration, there was a settlement agreement and Pearl Seas agreed to accept delivery of the vessel. At that point in time, it was not in class. And Pearl Seas had to retain another classification society, which basically had to start from the beginning. So all the work that had been done by Lloyd's was essentially of no value to Pearl Seas whatsoever. So we had to bring in a new classification society. We had to incur a great deal of expense. It took months of work. And in order to get the vessel finally in class with this other classification society, then registered with the flag states who could eventually go into operation. And fortunately, it did go eventually into operation, but not because of anything Lloyd's did. But there was some expectation. Now, just so we're clear, every time we reached out to Lloyd's, they, in effect, rejected our request for assistance. And it's interesting, the cases that Mr. Nichols refers to talk about embracing the contract. Well, there's actually nothing whatsoever in the Lloyd's Irving contract that would benefit us. If you read through the contract, you'll see no provisions in there that we can rely on whatsoever. We did at one point, and this is referred to in a declaration submitted by Mr. Streeter, ask if Lloyd's would act as a consultant for Pearl Seas. Mr. Streeter was a Lloyd's vice president. He was involved in the project and he was asked if if Lloyd's could assist us. And he said, no, this is in paragraph nine of his declaration. They he declined because he said there would be a conflict of interest. Lloyd's certainly didn't embrace us  And to answer your question, Judge Higginson, the way this worked is the vessel was supposed to have been finished in 2008. It took another year. There were inspections going on during the construction of the vessel that were done by Lloyd's Register, and they were sending out reports to Irving and Pearl Seas was receiving that information. So we were getting information from them. But there came a time when we ended up in a dispute. Pearl Seas did not think the vessel was in compliance with international conventions. We were very convinced it was not in compliance with the safety of life at sea convention. We had very significant concerns about that. Meanwhile, we had concerns when you say concerns, concerns that the earlier information you'd gotten was false. Correct. OK. In fact, there were direct representations by Lloyd's that the vessel was class worthy, that it was in compliance with SOLAS. I mean, I look forward to the opportunity to present this case to a jury because and the primary area of gross false representations had to do with fire code safety, roughly. Yes. One of the most dramatic problems with the vessel was the fact that it was not in compliance with the safety of life at sea convention. And Lloyd's had not done a proper job of inspecting the vessel to make sure that it was in compliance. Irving, this is a fact that came up during the arbitration. It was a matter of dispute. We thought that Irving was cutting corners every which way because they were losing money on the contract. And in our estimation, Lloyd's was assisting them in doing so. So they did not properly inspect the fire boundary penetrations in the vessel to make sure that they were in compliance with SOLAS. They did not properly inspect ceiling tiles to make sure they were in compliance with SOLAS. And if you read through, unfortunately, the laborious detail of our complaint, we recite at length the many things that we say were in violation of the safety of life at sea convention. And it's the main gravamen of our case. I'm sorry. I'm sorry. But is Judge Higginson asked Mr. Nichols whether it was the timing of the misrepresentations and Mr. Nichols answered both. Is your answer also both to that question? Do you know the question I refer to? Yes, Your Honor. There were representations made during the time the inspections were going on before delivery to us. We didn't not. Proceeds had no way of knowing at that time whether they were true or false. We had been allowed only a certain amount of inspection. In fact, there was a secret inspection that took place between Lloyd's and Irving that we were not even invited to participate in. But but you see now those answers, you know, if you're right on them, you're right to want your day in court. But strictly speaking on the issue before us, why doesn't it why doesn't that factual narrative suggest that they were misleading you constantly denying you access? You selected them. You entrusted them with this critical job of inspecting. They don't speak to you. They mislead you. But that sounds like deliberate fraud based on their role as a classifier whom you wanted and you trusted. I would say that initially there was trust. Yeah. And initially there was some reliance. Mr. Robertson talks in his declaration about the reliance he had on Lloyd's initially. And as I said at the start, there was some expectation that there would be a benefit. But the the direct benefits estoppel doctrine requires that we get some benefit. Does it actually? We didn't. Is mutual enforceability or or or some other? Well, that's a different question, I guess. Mutual enforceability. Is it a requirement for direct benefits estoppel? If we if the court were to say there was some benefit somewhere, the fact that it's not mutually enforceable and that you can't sue under the contract, that wouldn't be a hindrance to to the other sides prevailing, would it? I agree with that entirely. In fact, one of the points I was hoping to have an opportunity to make was imagine if you agree with Lloyd's and and agree that we are bound by the jurisdiction clause and you send us to England. So what happens? We try and make claims under the contract. Well, if you look at the contract, we have no rights under the contract. And they will say, based on the disclaimer that you mentioned, clause 15, that the way the contract is drafted, it specifically disclaims any right of a third party to benefit from the contract. It's very clear. I mean, the and the language is both in the rules and in the contract. So I'm very glad you picked up on that, because in our estimation, that's a very significant point. But does it matter? Because it may seem unfair. Some might argue if you can't really you can't sue into the contract, even though you're getting there because of the contract. But does it is it legally dispositive under our case law? I think it is, Your Honor. You know, this is an equitable concept. So part of this is doing equity. How could you be doing equity to send us into to England, to present a case under a contract under which we have no rights? That doesn't make any sense. But but if it were adjudicated here, why would that difficulty be any different? The difficult the difference here is that under U.S. maritime law, we can sue under a tort course of action as this court is acknowledging auto candies. So we have the right under the case law of this circuit to bring a claim for negligent misrepresentation. And that is the focus of our complaint. Do we don't know why the Learned District Court made the decision it did, do we? Your Honor, we don't know why Judge Hittner issued his decision, of course, under Rule 52A3. That doesn't make a difference. That's not an abuse of discretion under 52A3. He was not required to state his legal reasons or his to make any findings. So I don't think this court could find that that was an abuse of discretion. But it's true, it would have been helpful had he done so. And maybe we wouldn't be here had had he done so. But I think you can find, based on the the case law, that there was a sound basis for his ruling and that there's a sound basis also in the facts that were presented in the complaint, which is, of course, what we're talking about now. To support our case. What would be that sound basis that you would advocate today? I'm sorry? What would you advocate that basis to be? The let me take you through the I think we can distinguish the Hellenic benefits, sorry, the the Hellenic case on a number of grounds. We've talked about some of them, and I think they all are very important. Unlike the buyer in Hellenic, Pearl Seas did not use the Lloyds as the classification society after it acquired the ship. As I mentioned earlier, the vessel was not in class when we received the vessel. Instead, after it was delivered, because there were so many problems with the vessel and because of the difficulties we had had with Lloyds as a classification society, Pearl Seas had to completely start over with a new classification society to get the vessel in class. Another distinction with the Hellenic case is that Hellenic's claims were based on DNV's misrepresentations in the classification documents. That is not the case here. Our vessel was never in class with Lloyds. So we can't point to that document anyway. And it's not a factor. But we can't find any benefits that we received from what Lloyds did. What if Pearl Seas requested that the LRNA be the classification society for the ship? And there's the terms and regulations. What if we were to find that Lloyds registered North America is incorporated by that form selection clause? Do you lose? No, I think the we don't lose. I think that would be a stretch to make that finding. But we still don't lose because the wording of the contract is such that it really disclaims any obligations to us. And the way we see it, if you compare the wording of the dispute resolution clause in Hellenic with the clause that we see in the Lloyds rules and in the contract Lloyds had with Irving, the latter are much more narrow in focus and they are delineated to preclude any right of a third party to benefit from the rules or the contract. Do you have any authority for the principle that you've articulated that where the the obligation to you is disclaimed by the contracted issue that you cannot be bound by that clause that form selection clause? Do you have any authority for that whatsoever? The the cases that I would ask this court to take a close look at are the Breedis case and the Noble drilling case. These are two decisions from this circuit, and we think that they're very similar to our situation in the Breedis case. The court declined to apply the direct benefits of Staple rule when the non-signatory had not sued under the agreement. We have a similar situation. We are not suing under the classification contract. That's for sure. And a similar outcome in Noble drilling. That's a case we I would encourage you to take a close look at. And like the plaintiff in Noble drilling, Pearl Sea is not suing under the contract. And our claims do not arise from the contract that Lloyds had with the shipyard. Noble drilling does the phrase it uses is solely determined by, which is a stronger standard than other language embraces intertwined with based on, premised on. All of a sudden in Noble drilling it says solely determined by, which would be a stricter standard favoring your position. But I don't see that exclusivity elsewhere. Well, I think if we look at the facts in Noble drilling, the court said, look, the suit really had nothing to do with the agreement itself. It had to do with representations that were made before the agreement and with representations that were made afterwards. And we have a similar situation here in that our claims really relate to representations that were made by Lloyds concerning the information they were seeing on the vessel, the information they were providing to us, and by the position they took during the arbitration when they made statements to the arbitrators about the condition of the vessel that we consider were false. So I think that Noble drilling does have considerable parallels and is a case that you could look at and rely on in ruling in our favor. Those are two that I think help us quite a bit. Do any of your claims, the bottom line is, do any of your claims have to be determined by reference to a contract containing the Foreman's Selection Clause? No. Our claims are based on the misrepresentations that were made by Lloyds and the fraudulent statements that were made by Lloyds. The contract is simply information as to how the parties became involved with one another. But the fraudulent statements do not rely on the contract. They do not. Well, they never would have been made but for the contract, right? The fraudulent statements relate to statements that were made with reference to what Lloyds was doing concerning the vessel. They aren't statements that arise out of the contractual relationship. There wasn't any contractual relationship. There wasn't a direct contractual relationship, but this whole doctrine emerges when there isn't. I guess the question is, would you ever have been speaking to them but for that contract? We were speaking to them because, let's just bear in mind what happened here. The shipyard retained Lloyds, not Pearl Sea's. Pearl Sea's was okay with the retention of Lloyds. In fact, Lloyds had come to us and solicited Pearl Sea's business. But the contract was between Irving and Lloyds, not us. And we, in effect, were shut out of a lot of the discussions that went on between Irving and Lloyds. There was a lot of things that went between them that we knew nothing about, including, for example, the secret inspection I mentioned. And for example, when Mr. Streeter gave a declaration in the arbitration, that was prepared by Irving's lawyers. So there was a relationship between Lloyds and Irving. Irving had the contractual obligation with Pearl Sea's to deliver a vessel that was in class and registered with a flag state. That was its obligation. And so Lloyds was viewing, and correctly, Irving as its customer. What was the character of the information that keeps being hinted at that was being communicated, even if it was fraudulent and misleading? Why were they communicating with you at all? Yes, so the information that was being provided, the shipyard was trying to keep Pearl Sea's informed. Bear in mind, the shipyard was attempting to persuade Pearl Sea's to accept delivery of the vessel. Yeah. But that's Irving. What about LRNA's communications? The information we were getting from Lloyds was only given, in effect, with the permission of Irving. So we would ask for information that would be provided. We wanted to know the status. I mean, it is for sure true that Lloyds knew we were the prospective purchaser of the vessel. And that's in the contract, even. That's mentioned in the contract. So they knew that. And of course, we claim under Otto Candies that they had a duty of care to us because of that relationship. But there was no contractual relationship, and they had no obligation contractually to give us any information. The information that was being provided effectively was given to us on behalf of the shipyard so that we would know what was happening. The shipyard wanted us to take delivery of the vessel, and they were pressing us to do so. And they were using Lloyds to try and impress upon us the fact that they thought the vessel was okay. And we kept pushing back and saying, well, based on what we've seen, we don't think so, and we'd like to see more. And if you look at the complaint, you'll see that it was not until February of 2013 that Irving allowed us to have an inspection that was kind of unrestricted. And based on that inspection, a naval architect who worked for Pearl Sea's named John Womack went on board, and he was able to look, for example, at the fire boundary penetrations in detail for the first time. And his report came back. It was a shocking report, because he said, look, I've seen 31 fire boundary penetrations that I believe are not in compliance with SOLAS. When Irving received that information, that then led to a settlement of the arbitration. That's exactly what happened. Any more questions? But is there a problem with the idea that we have to get into the merits in order to determine if your client received a benefit, and that we're not supposed to have to do that, and does that cause a problem for your case? I don't think it's a problem at all, because when you look at a court of appeals hearing a writ of mandamus, you're looking for a patently erroneous result. You're looking for a clear abuse of discretion. So I think you have to look at whether or not you think the decision here was in compliance with existing precedent, whether the facts are supported by the record. And then you have to decide whether could a reasonable judge doing his job come up with this decision. That should be the standard for a writ of mandamus. I think you're going to find that Judge Hittner did his job. He certainly heard all the arguments. He read the briefs. We know from the transcript of the argument that he was alert to the issues. They were presented to him. Well, it's awfully hard, though, for us to give deference to a decision in a substantial case where no reasoning was given at all. And then when we asked for responses to the mandamus petition, we gave him an opportunity to respond. We didn't require it, of course, and he declined that opportunity. So what is it that we're deferring to? Well, I think the question really isn't whether you're deferring to him. The question is whether you can find that his order is patently erroneous. And based on the record and the case law that we've been discussing, you should find that his order was correct. There was a hearing, but this issue comes up at the telltale end. It was really about the privilege and it kind of was, but it did come up, and you did make these arguments, and they did make the Hellenic arguments, and the court was very familiar because the court had written in this area already. That's right. He had a decision in the Petrobras case. He's had a later decision in Brown where he dealt with the direct benefits estoppel rule. He clearly is cognizant of the principle, knew it. It was discussed. I think it's very clear from the transcript that he knew the issue. And it's unfortunate that he didn't give you a written opinion, which he had, but I don't think you can find that it was patently erroneous. Any other questions for me? Thank you very much. Thank you, Mr. Kimball. Thank you. Is Ms. Swain for rebuttal? May it please the court. We have several points on rebuttal, but I'll start where we left off. The standard for deferring to a district court is not that they are aware of briefs. Otherwise, it would be impossible to ever demonstrate that a district court was clearly erroneous or clearly abused his or her discretion because we presume all federal judges are aware that briefs have been filed. But if you read the transcript of that hearing, as Your Honor seemed to have done, you'll see there was discussion and an acknowledgment that these dispositive motions had been pending for many months, but there weren't any findings of fact or conclusions of law or analysis. So we do not know. It's a black hole what led the district judge to reach the conclusion he did. But we've got a conflation here of seeking benefit, which is the standard under Hellenic in order for the direct benefits estoppel doctrine to apply and the notion of having obtained benefits, and I think Judge Elrod was getting at this point, if you have to prove that on the merits you obtained a benefit, by definition you would be dismantling your cause of action, which is that you failed to obtain a benefit, but you were supposed to, and that's what autocandies is all about. And they have endeavored to bring an autocandies claim. The problem is they've got all this complexity that does not map on to autocandies and is confusing all the issues. We have an arbitration proceeding. They're trying to re-litigate here. What Judge Elrod noted is we never issued final class certification, as was the case in Hellenic, but that's not the dispositive fact. It's that they expected that to be the benefit. But how come there was never final class certification? Well, the dispute between the shipbuilder and Pearl Sea's erupted while the ship was being constructed. We barely had anything to say. We were doing our job, surveying during construction, but then they're saying we don't want to pay you, and they go and hire their own engineer to come in and find all these problems in the middle of the process. Then we have years of arbitration over the construction process where they keep trying to find problems, and all we ever say is it was looking like it was on target to be class worthy, but we never got to the end game there. We never got a chance. The twist, though, I think the difficulty in this case that is distinct from Hellenic is that your client then became involved in representations as a result of the arbitration, as distinct from the classification contract, and if they try to say temporarily that's where we're alleging, why would the direct benefits estoppel apply to those distinct time? Well, they'd have a problem on the merits because they were no longer relying on our representations when we were entangled in this adversarial process. But if that's what they're trying to do to say this is distinct from auto candies, it's odd that they are the ones that invoke auto candies in their briefing both to the district court and to this district court. But we have the reason Mr. Nichols said it seems to be both is that their complaint seems to allege that we were always wrong. We just didn't know what we were talking about. Their own engineer knew better. The problem is where's the reliance? If they have their own engineer who's telling them we don't know what we're talking about, how could we have negligently misrepresented or fraudulently induced them to do anything? They're not listening to us. So it is a problem for their auto candies claim. It's also a problem for their equitable argument about why they shouldn't have to go to England as the forum selection clauses dictate. But as Judge Smith wrote very eloquently in Hainsworth, the fact that there are remedies that will not be available in another forum, in Hainsworth it involved a forum selection clause and that was also a choice of law clause that implodes English law where U.S. securities law was not going to apply. And you had the plaintiffs in that case accusing the defendants of fraudulently pursuing the forum selection clause in order to circumvent U.S. securities law. And Judge Smith said that doesn't matter. That's parochial. That is chauvinistic on the part of us to say other laws aren't as good as ours and forum selection clauses can be overridden if the remedies are going to be different. So we've sort of gotten all caught up in the fact that we can't understand what they're accusing us of misrepresenting and forgetting what really matters is are they trying to state an auto candies claim? Are they claiming they should have benefited by our performance under the contract and by our compliance with our own rules? I have two questions. Certainly. You have to establish that the district court was patently erroneous and it's just why couldn't we say that because clause 15 is different than Hellenic the district court was not patently erroneous even if ultimately that's not correct? Well, we don't know what the context of the contract at issue in Hellenic was. It's not described in the court's opinion. We know that the district court and then this court looked at the classification society's rules. And that is the easiest way for the forum selection clause to comply because we don't even have a contract, LRNA, unless we're operating under the auspices, under the umbrella of this 254-year-old classification society. We don't, our representations are meaningless but for those rules and that contract which says go out and see are we in compliance with the rules. Well, this is my second question is why can't we, we could also hold, there's another reason why the district court wasn't patently erroneous that the plaintiffs allege here that they had no actual knowledge of the contract and they didn't bring claims that could be determined by reference to the agreement. And so the district court following its own decision in Petrobus could say this is a different situation. And the Fifth Circuit hasn't directly spoken to this situation and I'm not going to, and I find it inequitable or for whatever reason, it's not the same situation. There, why isn't that an argument that that's not patently erroneous? Two things, Your Honor. First of all, Petrobus, we had representations that were made extraneous to any contract over here which happened to be a purchase order that the plaintiff didn't even know existed until the plaintiff sued and then was met with the form selection clauses in this purchase order between other parties. That's not the facts here. Here we have the plaintiff alleging in its own complaint that it wanted us to be the classification society and initiated conversations with us before any contracts were negotiated. And then because it wanted us involved, we executed a contract with the shipbuilder and they executed a contract with the shipbuilder, both of which referenced the classification society's existence and the fact that it's going to be providing these services. All of it under the rules of this classification society. So we aren't involved but for their knowledge that it's going to be the Lloyd's Register rules and regulations that will apply to everything we do. So they had that knowledge from day one according to their own pleadings, completely distinguishable from noble drilling and Petrobus. And we have to remember, this seems complicated but it's not. It's Hellenic plus Atlantic Marine. And Atlantic Marine tells us, this is mandamus worthy. We didn't know that before but now we know because of the very reasons that Judge Haynes articulated in her concurrence. If you give the message to district judges that they don't have to do what seems like a complicated analysis but really isn't and you can just blow off these form selection clauses, you are unsettling decades of progress in terms of honoring legitimate commercial expectations because district judges will never be reviewed. If you deny a motion to dismiss on forum nonconvenience grounds, who is going to bring that up on appeal? I'm sorry? But nonetheless, the district judge did not just blow off the forum selection. Oh, not at all. They did not raise that argument that was raised ultimately in the case. So, but moving on. Oh, absolutely not. Judge Yackel took it very seriously and had no reason to apply the standard that was articulated by the Supreme Court last term in Atlantic Marine. That's new law. He did his job. But now, if we say this isn't mandamus worthy when you have Atlantic Marine on the books, then the message will be to district judges, you don't have to do this tough work because it will be insulated from appellate review because relief will be an illusion. You cannot, you know, put it back into the bottle as this court said in Volkswagen. Once you've had to try a case to final judgment in a different forum, in the wrong forum, you've lost your right to any remedy. All right. Thank you. Your time has expired and your petition is under submission and the court is in recess.